UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
AJMEL A. QURESHI
UNITED STATES MAGISTRATE JUDGE

U.S. COURTHOUSE
6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770
(301) 344-0393

June 1, 2022

LETTER TO COUNSEL

Re: *Shamael Fletcher v. Kilolo Kijakazi, Commissioner, Social Security Administration*,[1]
Civil No. AAQ-21-00238

Dear Counsel:

On January 27, 2021, Plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claim for disability insurance financial assistance under Title II of the Social Security Act. ECF No. 1. I have considered the parties' cross-motions for summary judgment. ECF Nos. 13, 14. I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, vacate the Commissioner's decision, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

I.   **The History of this Case**

Plaintiff filed her claim for financial assistance on October 22, 2018, alleging a disability onset date of November 1, 2014. ECF No. 13-1 at 1. An Administrative Law Judge ("ALJ") denied Plaintiff's claim initially and upon reconsideration. *Id.* Plaintiff then requested a hearing before an ALJ, which took place telephonically on May 29, 2020. *Id.* at 2. Following that hearing, the ALJ determined Plaintiff did not have a disability within the meaning of the Social Security Act during the relevant time frame. ECF No. 10 at 12-31. The Appeals Council denied Plaintiff's request for review, ECF No. 10 at 1-3; thus, the ALJ's decision constitutes the final, reviewable decision of the SSA. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

The ALJ found that Plaintiff suffered from the severe impairments of "morbid obesity, hypertension, diabetes, anxiety disorder, posttraumatic stress disorder, major depression disorder." ECF No. 10 at 18. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

---

[1] When this proceeding began, Andrew Saul was the Commissioner of the Social Security Administration. On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of the Social Security Administration and is, therefore, automatically substituted as a party. *See* Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

*Shamael Fletcher v. Kilolo Kijakazi, Commissioner, Social Security Administration*
Civil No. AAQ-21-00238
June 1, 2022
Page: 2

> perform light work as defined in 20 CFR 404.1567(b) except the claimant could lift or carry 10 pounds frequently or 20 pounds occasionally, sit more than 6 hours on a sustained basis in an 8 hour day, stand and/or walk 6 hours in an 8 hour day, with unlimited pushing and/or pulling, including operation of hand and/or foot controls other than as shown for lift and/or carry. The claimant can occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, and occasionally balance, stoop, kneel, crouch, or crawl. The claimant must avoid concentrated exposure to extreme cold, extreme heat, wetness, excessive vibration, and hazards, such as unprotected heights or moving machinery. The claimant can perform simple routine repetitive tasks in a low stress work environment defined as no strict production quotas. The claimant cannot perform assembly line pace work. The claimant can occasionally interact with the public, supervisors, and coworkers. Changes in work duties changes must be gradually introduced.

*Id.* at 22. The ALJ determined that Plaintiff was unable to perform past relevant work as a school bus monitor, but could perform other jobs that existed in significant numbers in the national economy. *Id.* at 29-30. Therefore, the ALJ determined that Plaintiff did not have a disability. *Id.* at 31.

## II.     Plaintiff's Arguments on Appeal

Plaintiff raises two arguments on appeal, specifically that the ALJ: (1) erroneously assessed Plaintiff's RFC; and (2) erroneously evaluated Plaintiff's subjective complaints. ECF No. 13-1 at 3-16.

Plaintiff's first argument is that that the ALJ erroneously assessed her RFC. *Id.* at 3. Specifically, Plaintiff contends that the ALJ failed to perform a proper function-by-function assessment of Plaintiff's abilities by: (1) failing to provide adequate evidence upon which he relied to make his decision; (2) failing to provide sufficient information to determine what the term "strict production quotas" means; (3) failing to explain how Plaintiff would be capable of maintaining concentration, attention, and pace for eighty-five percent of the workday; and (4) failing to properly evaluate pertinent evidence. *Id.* at 3-10.

In order to determine a claimant's RFC, an ALJ must conduct a function-by-function assessment of the claimant's ability to do work-related activities. Social Security Ruling 96-8p. A proper function-by-function assessment of a claimant's abilities includes a "'narrative discussion describing how the evidence supports each conclusion…'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting Social Security Ruling 96-8p). In addition, the assessment must have three components: (1) evidence; (2) logical explanation; and (3) conclusion. *See id.* Where an ALJ's decision has "applied the correct legal standards" and the

*Shamael Fletcher v. Kilolo Kijakazi, Commissioner, Social Security Administration*
Civil No. AAQ-21-00238
June 1, 2022
Page: 3

factual findings are "supported by substantial evidence", the ALJ's determination should be affirmed. *Bird v. Comm'r of Soc Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012).

Applying these standards, I begin with Plaintiff's claim that the ALJ's RFC assessment was in error because he allegedly failed to provide sufficient information to determine what the term "strict production quotas" means. ECF No. 13-1 at 3-8.

In the case before us, the ALJ made a RFC determination, in part, that Plaintiff is limited to "simple routine repetitive tasks in a low stress work environment defined as no strict production quotas." ECF No. 10 at 21-22. Plaintiff argues that the ALJ did not define "no strict production quotas" in contravention of *Thomas*, 916 F.3d at 307, *Perry v. Berryhill*, 765 Fed.Appx. 869 (4th Cir. 2019) and *Ansah v. Saul*, No. 1:19-cv-02503-JMC, 2021 WL 962702, at *1 (D. Md. Mar. 12, 2021), among other cases. ECF No. 13-1 at 6-8. I agree with the Plaintiff.

In *Thomas*, the United States Court of Appeals for the Fourth Circuit remanded the ALJ's decision, in part, because the RFC included the phrase "production rate or demand pace," which was never defined or explained. *Thomas*, 916 F.3d at 312. The Court found that the lack of definition made it impossible to assess whether such limitations were supported by substantial evidence, a requirement when reviewing an ALJ's determination. *Id.* Similarly, in *Perry*, where "non-production oriented work setting" was not defined, and held no established regulatory definition, the Court remanded because they could not assess "whether a limitation to 'non-production oriented work settings[s]' properly accounts for [Plaintiff's] impairments…" 765 Fed.Appx. at 870. Finally, the court in *Ansah* concluded that remand was appropriate where the ALJ failed to define "no strict production quotas." 2021 WL 962702, at *4. There, the Court likewise determined the missing definition "frustrates meaningful appellate review." *Id.* The case before us similarly lacks a definition for "no strict production quotas" and the phrase has no established regulatory definition.

The Commissioner responds that the ALJ's RFC determination included clarification of the term "no strict production quotas" because the ALJ "specifically clarified that Plaintiff 'cannot perform assembly line pace work' to clarify 'no strict production quotas.'" ECF No. 14-1 at 6. Following, the Commissioner argues that "[c]ourts in this district have specifically agreed that 'assembly line pace work provides the contextual prerequisite to meaningful judicial review in this context'" and cites to *Jackie W. v. Comm'r, Soc. Sec Admin.*, No. DLB-18-3883, 2019 WL 5960642, at *1 (D. Md. Nov. 13, 2019) in support of that proposition. *Id.* While that may be true, it is unclear from the ALJ's decision and the transcript of the hearing in this case, as to whether the prohibition on assembly line pace work was meant to clarify "no strict production quotas."

As an initial matter, multiple cases in this district, decided since *Jackie W.*, have concluded that even where a prohibition on assembly line work is included in close proximity to a prohibition on production quotas, the former provides insufficient definition regarding the latter. *See Jennifer*

*Shamael Fletcher v. Kilolo Kijakazi, Commissioner, Social Security Administration*
Civil No. AAQ-21-00238
June 1, 2022
Page: 4

*Anne S. v. Saul*, No. TMD-20-519, 2021 WL 2139432, at *1, *5 (D. Md. May 26, 2021) (finding that the terms "fast pace or production quotas" were not sufficiently defined where the ALJ's decision stated: "require a fast pace or production quotas such as would customarily be found working on an assembly line"); *Darrel A. v. Saul*, No. CBD-19-2351, 2021 WL 927457, at *1,*7-9 (D. Md. Mar. 10, 2021) (finding the term "production quotas" to be insufficiently defined where the RFC stated: "no work involving production quotas or where the pace of productivity is dictated by an external source over which the individual has no control (e.g., assembly lines or conveyor belts)").

Furthermore, in the context of this specific case and the language used by the ALJ here, I am convinced that the latter cases are more instructive. Much in the same way we might examine a statute to derive its meaning, we can look at the plain language and grammar of the RFC to weigh the merits of the Commissioner's point. The words "no strict production quotas" are separated from the following sentence "The claimant cannot perform assembly line pace work" by a period – not a colon, semicolon, or dash. The latter forms of punctuation are used to link clauses, ideas, elaboration, or explanations, while periods are typically used to illustrate the end of a complete point or thought. As a result, the words "no strict production quotas" appear to be the end of a complete point. *See* A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 161 (2012) ("Words are to be given the meaning that proper grammar and usage would assign them); *Id.* at 140 ("[P]unctuation in a legal text will rarely change the meaning of a word, but it will often determine whether a modifying phrase or clause applies to all that preceded it…"). Moreover, the sentence "The claimant cannot perform assembly line pace work" lacks an introductory clause, such as "For Example," that would highlight for the reader a sentence being used to clarify the preceding sentence. This further undercuts the conclusion that the latter sentence is meant to clarify the former.

The importance of such connecting language or punctuation is further clarified when one compares the ALJ's decision in this case to that in *Jackie W*. In *Jackie W*, the plaintiff argued remand was warranted where the ALJ had not defined the term "fast-productivity goals" in the RFC determination. 2019 WL 5960642, at *4. The Court did not believe remand to be required because the ALJ used "assembly-line work" as an example of "fast-productivity goals" in her hypothetical to the Vocational Expert ("VE"). *Id*. Specifically, the ALJ stated "And they could not perform work that would require fast-productivity goals, *like – like* assembly line work." *Id.* (emphasis added). The Court held that the ALJ's inclusion of the term "assembly-line work" in her hypothetical to the VE provided enough clarity of "fast-productivity goals" for review. *Id.* Unlike that case, here, "assembly line work" is not linked to "no strict production quotas" by the use of the word "like" or similar language. The ALJ used the exact same language in posing his hypothetical to the VE during the hearing as he did in his hearing decision. ECF No. 10 at 21-22, 60-61. Thus, it is unclear from the hearing decision or the transcript what was meant by "no strict production quotas". Without clarification as to what "strict production quotas" means – either by

Case 8:21-cv-00238-AAQ   Document 15   Filed 06/01/22   Page 5 of 5

*Shamael Fletcher v. Kilolo Kijakazi, Commissioner, Social Security Administration*
Civil No. AAQ-21-00238
June 1, 2022
Page: 5

definition or by example, I cannot conclude that substantial evidence supports the RFC determination. *See Perry* 765 Fed.Appx. at 872.

As previously noted, a proper RFC assessment contains evidence, a logical explanation, and a conclusion. *Thomas,* 916 F.3d at 311. Without an understanding of what "no strict production quotas" means, it is not possible to determine where the logical explanation lies between the provided evidence and the stated conclusion. *See Perry* 765 Fed.Appx. at 872 (remanding where the court found that without an explanation for the terms "non-production oriented work setting" in the RFC, the court could not "meaningfully assess whether there is a 'logical bridge' between the evidence in the record and the ALJ's conclusion"). Accordingly, in light of the foregoing, I conclude a proper function-by-function assessment was not done and therefore this case must be remanded.

As this case is being remanded on other grounds, I do not need to address Plaintiff's argument regarding the ALJ's erroneous evaluation of Plaintiff's subjective complaints. ECF No. 13-1 at 10-16. On remand, the ALJ can consider this argument and make any required adjustments to the opinion.

### III. CONCLUSION

For the reasons set forth herein, Plaintiff's Motion for Summary Judgment, ECF No. 13, is DENIED and Defendant's Motion for Summary Judgment, ECF No. 14, is DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is VACATED. This case is REMANDED for further proceedings in accordance with this opinion.

Despite the informal nature of this letter, it is an Order of the Court and should be treated accordingly. An implementing order follows.

Sincerely,

/s/
Ajmel A. Quereshi
United States Magistrate Judge